1  <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2  Name  Baker,        Frederick      L.                    FILED

3      (Last)          (First)        (Initial)

   Prisoner Number  C-22918                          DEC 12 2007

4  Institutional Address  Correctional Training Facility,

5                                                   RICHARD W. WIEKING
   P.O. Box 689, B-321, Soledad, California 93960   CLERK, U.S. DISTRICT COURT
                                                    NORTHERN DISTRICT OF CALIFORNIA

6

7              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA

8  FREDERICK LEE BAKER,                    )

9  (Enter the full name of plaintiff in this action.)    )     CV  07  6289
                                           )                              CW
              vs.                          )     Case No. _____
10 BEN CURRY, Warden, et al.,              )     (To be provided by the clerk of court)   (PR)
                                           )
11 Correctional Training Facility;         )     PETITION FOR A WRIT
                                           )     OF HABEAS CORPUS
12 Board of Parole Hearings.               )
                                           )     [Related Case No. C.04-3753]
13 _____)
                                           )
14 (Enter the full name of respondent(s) or jailor in this action)  )
                                           )
15 _____)

16              <u>Read Comments Carefully Before Filling In</u>

17 <u>When and Where to File</u>

18      You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23      If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1 <u>Who to Name as Respondent</u>

2    You must name the person in whose actual custody you are.  This usually means the Warden or

3 jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4 you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5 respondents.

6    If you are not presently in custody pursuant to the state judgment against which you seek relief

7 but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 was entered.

10 <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11    1.  What sentence are you challenging in this petition?

12    (a)    Name and location of court that imposed sentence (for example; Alameda

13         County Superior Court, Oakland):

14    <u>Riverside Superior Court</u>            <u>Riverside</u>

15         Court                          Location

16    (b)    Case number, if known __<u>CR 17643</u>__

17    (c)    Date and terms of sentence __<u>10/30/1980, 7 to life, + 8 yrs, 3 mos</u>__

18    (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19         parole or probation, etc.)        Yes <u>XX</u>    No ____

20         Where?

21         Name of Institution: <u>Correctional Training Facility</u>

22         Address: <u>P.O. Box 689, B-321, Soledad, CA 93960-0689</u>

23    2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24 more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25 challenging more than one sentence, you should file a different petition for each sentence.)

26 <u>Kidnap Robebry (PC § 209(b)); Robbery (PC § 211); Vehicle Theft</u>

27 <u>(VC § 10851); Grand Theft (PC § 417); Attempted Murder (PC §217);</u>

28 <u>Weapons Use and Possession (PC § 12022(a)).</u>

PET. FOR WRIT OF HAB. CORPUS        - 2 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3. Did you have any of the following?

Arraignment:                              Yes __XX__      No _____

Preliminary Hearing:                      Yes __XX__      No _____

Motion to Suppress:                       Yes _____      No __XX__

4. How did you plead?

Guilty _____    Not Guilty __XX__    Nolo Contendere _____

Any other plea (specify) _____N/A_____

5. If you went to trial, what kind of trial did you have?

Jury __XX__    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?                  Yes _____    No __XX__

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment                  Yes __XX__    No _____

    (b)    Preliminary hearing          Yes __XX__    No _____

    (c)    Time of plea                 Yes __N/A__    No __N/A__

    (d)    Trial                        Yes __XX__    No _____

    (e)    Sentencing                   Yes __XX__    No _____

    (f)    Appeal                       Yes __XX__    No _____

    (g)    Other post-conviction proceeding    Yes _____    No __XX__

8. Did you appeal your conviction?                 Yes __XX__    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal              Yes __XX__    No _____

        Year: __1982__    Result: __AFFIRMED_____

        Supreme Court of California    Yes _____    No __XX__

        Year: __N/A__    Result: __N/A_____

        Any other court              Yes _____    No __XX__

        Year: __N/A__    Result: __N/A_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

                                 N/A

PET. FOR WRIT OF HAB. CORPUS         - 3 -

1  petition?                                    Yes _____    No_____ N/A

2  (c)  Was there an opinion?                   Yes _____  .  No_____ N/A

3  (d)  Did you seek permission to file a late appeal under Rule 31(a)?

4                                                Yes _____    No_____ N/A

5  If you did, give the name of the court and the result:

6  _____ N/A _____

7  _____

8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9  this conviction in any court, state or federal?      Yes _____    No___ XX

10  [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition. You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15  U.S.C. §§ 2244(b).]

16  (a)  If you sought relief in any proceeding other than an appeal, answer the following

17  questions for each proceeding. Attach extra paper if you need more space.

18  I.  Name of Court: ___ N/A _____

19  Type of Proceeding: ___ N/A _____

20  Grounds raised (Be brief but specific):

21  a._____ N/A _____

22  b._____ N/A _____

23  c._____ N/A _____

24  d._____ N/A _____

25  Result: _____ N/A _____ Date of Result:____ N/A ___

26  II.  Name of Court: ___ N/A _____

27  Type of Proceeding: N/A _____

28  Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1 a._____ N/A _____

2 b._____ N/A _____

3 c._____ N/A _____

4 d._____ N/A _____

5 Result: _____ N/A _____ Date of Result: __ N/A __

6 III. Name of Court: _____ N/A _____

7 Type of Proceeding: _____ N/A _____

8 Grounds raised (Be brief but specific):

9 a._____ N/A _____

10 b._____ N/A _____

11 c._____ N/A _____

12 d._____ N/A _____

13 Result: _____ N/A _____ Date of Result: __ N/A __

14 IV. Name of Court: _____ N/A _____

15 Type of Proceeding: _____ N/A _____

16 Grounds raised (Be brief but specific):

17 a._____ N/A _____

18 b._____ N/A _____

19 c._____ N/A _____

20 d._____ N/A _____

21 Result: _____ N/A _____ Date of Result: __ N/A __

22 (b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

23 Yes __XX__ No____

24 Name and location of court: __U.S. DISTRICT COURT, CENTRAL DISTRICT__
 (Case No: EDCV06-1323 JSL (MAN))

25 B. GROUNDS FOR RELIEF

26 State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS - 5 -

1   need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]    PETITIONER WAS DEPRIVED DUE
                                                         PROCESS OF LAW WHEN THE STATE COURT CONCLUDED CONTRARY TO

5   Claim One:  "CLEARLY ESTABLISHED" UNITED STATES SUPREME COURT PRECEDENT
    THAT PETITIONER HAS NO LIBERTY INTEREST IN PAROLE AND THEN DENIED

6   PETITIONER'S CLAIM WITHOUT ANY EVIDENTIARY SUPPORT IN THE RECORD...
    (see p. 10 of Brief in Support of Writ attached hereto)

7   Supporting Facts: On June 1, 2007, the State court denied Petitioner
    relief, asserting that he had no due process liberty interest in

8   being paroled because the panel's decision was a preliminary decision.
    (Exh. W at 6).  Moreover, in spite of the record being replete with

9   evidence to the contrary, the State court further stated that
    "significant portions of the hearing was unable to be transcribed."

10  (Id. at pp. 3-5).
                      THE STATE COURT'S ADJUDICATION RESULTED IN A DECISION THAT
11  Claim Two:  WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS
    IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.

12  (Please see page 17 of Brief in Support of Writ attached hereto).

13  Supporting Facts:   The State Court denied relief without requiring
    Respondent to file a responsive return, after it had been determined

14  that Petitioner stated sufficient facts in both his original petition
    (Exh. H) and his amended/supplemental petition (Exh. P) to establish

15  a prima facie case for relief. See Exh. W at p. 6.)   Thus, depriving
    Petitioner of a full and fair hearing.  (See Pet. Decl's (1) & (2)).

16
                    PETITIONER WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH
17  Claim Three:  AMENDMENT RIGHTS TO DUE PROCESS WHEN THE BOARD DISAPPROVED
    AND RESCINDED ITS SEPTEMBER 24, 2004 FINDING THAT HE WAS SUITABLE FOR

18  PAROLE BASED SOLELY ON THE FACT THAT THE BOARD LOST THE DECISION
    PORTION OF THE TRANSCRIPT FROM THE HEARING.  (see p. 25 of Brief).

19  Supporting Facts:

20            After it was determined that Petitioner had met the
    prerequisites to parole release, the Board during its decision review

21  process subsequent of the hearing, overturned the the decision
    because its staff had failed to produce all tapes for transcription

22  either because it lost or misplaced the "second tape." Exh(s) C & D.

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:
                                        N/A

25  _____

26  _____

27  _____

28  _____

1    need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

                            PETITIONER WAS DEPRIVED DUE
                            PROCESS OF LAW WHEN THE STATE COURT CONCLUDED CONTRARY TO
5    Claim One: "CLEARLY ESTABLISHED" UNITED STATES SUPREME COURT PRECEDENT
     THAT PETITIONER HAS NO LIBERTY INTEREST IN PAROLE AND THEN DENIED
6    PETITIONER'S CLAIM WITHOUT ANY EVIDENTIARY SUPPORT IN THE RECORD...
     (see p. 10 of Brief in Support of Writ attached hereto)
7    Supporting Facts: On June 1, 2007, the State court denied Petitioner
     relief, asserting that he had no due process liberty interest in
8    being paroled because the panel's decision was a preliminary decision.
     (Exh. W at 6). Moreover, in spite of the record being replete with
9    evidence to the contrary, the State court further stated that
     "significant portions of the hearing was unable to be transcribed."
10   (Id. at pp. 3-5).

                        THE STATE COURT'S ADJUDICATION RESULTED IN A DECISION THAT
11   Claim Two: WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS
     IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.
12   (Please see page 17 of Brief in Support of Writ attached hereto).

13   Supporting Facts: The State Court denied relief without requiring
     Respondent to file a responsive return, after it had been determined
14   that Petitioner stated sufficient facts in both his original petition
     (Exh. H) and his amended/supplemental petition (Exh. P) to establish
15   a prima facie case for relief. See Exh. W at p. 6.) Thus, depriving
     Petitioner of a full and fair hearing. (See Pet. Decl's (1) & (2)).
16

                        PETITIONER WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH
17   Claim Three: AMENDMENT RIGHTS TO DUE PROCESS WHEN THE BOARD DISAPPROVED
     AND RESCINDED ITS SEPTEMBER 24, 2004 FINDING THAT HE WAS SUITABLE FOR
18   PAROLE BASED SOLELY ON THE FACT THAT THE BOARD LOST THE DECISION
     PORTION OF THE TRANSCRIPT FROM THE HEARING. (see p. 25 of Brief).
19   Supporting Facts:

20            After it was determined that Petitioner had met the
     prerequisites to parole release, the Board during its decision review
21   process subsequent of the hearing, overturned the the decision
     because its staff had failed to produce all tapes for transcription
22   either because it lost or misplaced the "second tape." Exh(s) C & D.

23        If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

                            N/A
25   _____

26   _____

27   _____

28   _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

Please see ("Table of Authorities") on page iii of the Brief in Support of Writ of Habeas Corpus.

_____

Do you have an attorney for this petition?          Yes_____    No  XX

If you do, give the name and address of your attorney:

_____ N/A _____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _12/4/2007_                    _____

            Date                                    Signature of Petitioner

(Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS          - 7 -

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

FREDERICK LEE BAKER,        )    Case No:
                        )
     Petitioner-Appellant,   )    [Related Case No. C 04-3753]
                        )
     v.                   )
                        )
BEN CURRY, Warden, et al.,    )
Correctional Training Facility,  )
                        )
     Respondent-Appellee.    )
                        )
                        )

---

## BRIEF IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

---

Frederick L. Baker
Correctional Training Facility
Central-Facility
C-22918
P.O. Box 689, B-321
Soledad, CA 93960-0689

## TABLE OF CONTENTS

Page:

STATEMENT OF JURISDICTION ............................................ 1

QUESTIONS PRESENTED FOR REVIEW ....................................... 1

STATEMENT OF THE CASE ............................................... 2

SUMMARY OF ARGUMENT ................................................ 8

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF RELIEF

    I)   PETITIONER WAS DEPRIVED DUE PROCESS OF LAW WHEN THE STATE
        CONCLUDED CONTRARY TO "CLEARLY ESTABLISHED" UNITED STATES
        SUPREME COURT PRECEDENT THAT PETITIONER HAS NO LIBERTY
        INTEREST IN PAROLE AND THEN DENIED PETITIONER'S CLAIM
        WITHOUT ANY EVIDENTIARY SUPPORT IN THE RECORD TENDING TO
        ESTABLISH THE BOARD OF PAROLE HEARINGS' ALLEGATION THAT
        THE HEARING COULD NOT BE TRANSCRIBED ............................ 10

        A.   Petitioner Has A Liberty Interest in Parole
            Under the Due Process Clause of the United
            States Constitution ..................................... 10

        B.   The State Court Violated the "Some Evidence"
            Standard and Petitioner's Right to Due
            Process When It Denied Relief Without Any
            Evidentiary Support in the Record ...................... 13

    II)  THE STATE COURT'S ADJUDICATION RESULTED IN A DECISION THAT
        WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN
        LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT
        PROCEEDING ..................................................... 17

        A.   15 CCR § 2254 is the Means to Recreate the
            Missing Portion of the September 2004
            Hearing Transcript ..................................... 20

        B.   The Missing Portion of the September 04'
            Hearing Recreated Pursuant to 2254 Regulatory
            Provisions ............................................. 22

   III) PETITIONER WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT
        RIGHT TO DUE PROCESS WHEN THE BOARD DISAPPROVED AND RESCINDED
        ITS SEPTEMBER 24, 2004 FINDING THAT HE WAS SUITABLE FOR
        PAROLE BASED SOLELY ON THE FACT THAT THE BOARD LOST THE
        DECISION PORTION OF THE TRANSCRIPT FROM THE HEARINGS ........... 25

        A.   The September 2004 Hearing Panel's Decision ............. 26

        B.   The Board Staff's Review of the September 04'
            Hearing Transcript and Finding of Suitability .......... 28

CONCLUSION ......................................................... 32

**TABLE OF AUTHORITIES**

Page

Cases:

Andrews v. United States, 373 U.S. 334 (1963) ............... 18

Anderson v. Harless, 459 U.S. 4 (1982) ...................... 17

Apprendi v. New Jersey, 530 U.S. 466 (2002) ................. 25

Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003).........11,.12, 25

Bishop v. Wood, 426 U.S. 341 (1976) ......................... 9

Bland v. California Dept. of Corrections,
    20 F.3d 1469 (9th Cir. 1994) ...................... 19, 20

Board of Pardons v. Allen,
    482 U.S. 369 (1987) ....... 8, 10, 11 - 16, 24, 27, 29 - 32

Board v. Dumchat, 452 U.S. 458 (1981) ....................... 32

Carafas v. LaVallee, 391 U.S. 234 (1968) .................... 18

Dent v. West Virginia, 129 U.S. 114 (1889) .................. 32

Early v. Packer, 537 U.S. 3 (2002) .......................... 32

Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,
    442 U.S. 1 (1979) ...... 8, 10, 11, 12, 16, 28, 29, 30, 32

In re Dannenberg, 34 Cal.4th 1061 (2005) .... 12, 13, 21, 24 - 28

In re Harris, 5 Cal.4th 813 (1993) .......................... 18

In re Hitchings, 6 Cal.4th 97 (1993) ........................ 30

In re Powell, 45 Cal.3d 894 (1980) .................. 28, 30, 31

In re Romero, 8 Cal.4th 728 (1994) ...................... 17, 18

In re Rosenkrantz,
    29 Cal.4th 616 (2002) .... 8, 9, 11, 13, 16, 17, 24, 26 - 31

In re Spence, 36 Cal.App.3d 636 (1974) ...................... 28

In re Sturm, 11 Cal.3d 258 (1974) ....................... 17, 30

Irons v. Carey, 479 F.3d 658 (9th Cir. 2007) ..... 11, 12, 16, 31

Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454 (1989) ......... 11

Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) ........... 17

Marshall v. Longberger, 459 U.S. 422 (1983) ................ 20

McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002) .. 11 - 15, 25

Oxborrow v. Eikenberry, 877 F.2d 1395 (9th Cir. 1989) ....... 19

Peltier v. Wright, 15 F.3d 860 (9th Cir. 1994) .............. 9

Sass v. California Bd of Prison Terms,
      461 F.3d 1123 (9th Cir. 2006) .......... 11, 12, 16, 31, 32

Schware v. Board of Examiners, 353 U.S. 232 (1957) .......... 31

Superintendent v. Hill, 472 U.S. 445 (1985) ... 8, 13, 14, 16, 31

Williams v. Taylor, 529 U.S. 362 (2000) .................... 32

Wolff v. McDonnell, 418 U.S. 539 (1974) .................... 32

**UNITED STATES:**

CONSTITUTION
  5th Amendment .................................... 2, 25
  14th Amendment ............................ 2, 10, 12, 25

CODE 28
§ 2243 ................................................. 18
§ 2254 ................................................. 1

**CALIFORNIA:**

PENAL CODE
§ 1473 ................................................. 18
§ 1484 ................................................. 18
§ 1508 ................................................. 18
§ 3041 ............................................. 10, 26
§ 3041(b) .............. 6, 12, 13, 14, 20, 21, 25, 28, 31
§ 3041.1 ................................. 6, 20, 21, 24
§ 3042 ......................................... 4, 26
§ 3042(b) ................................... 6, 20, 24
§ 3042(c) ................................... 6, 20, 24

iv

<u>CODE OF REGULATIONS, TITLE 15, DIV. 2.</u>

§ 2042 ........................................... 14, 25, 28

§ 2254 ........................................... 20, 21, 22

§ 2280 ........................................... 26

§ 2281(a)-(d) .................................... 26

§ 2282(c) ........................................ 26, 27

Brief in Support of Writ
of Habeas Corpus

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FREDERICK LEE BAKER,                )   Case No:
                                    )
        Petitioner-Appellant,       )   [Related Case No. C 04-3753]
                                    )
    v.                              )   **BRIEF IN SUPPORT OF**
                                    )   **PETITION FOR WRIT OF**
BEN CURRY, Warden, et al.,          )   **HABEAS CORPUS**
Correctional Training Facility,     )
                                    )
        Respondent-Appellee.        )
_____)

## STATEMENT OF JURISDICTION

The district court has jurisdiction to decide the petition
for writ of habeas corpus filed by petitioner under 28 U.S.C.
§ 2254. By order filed Nov. 28, 2007, the California Supreme
Court denied review. See Appendix 1. That judgment is a final
order that disposes of all petitioner's claims.

## QUESTIONS PRESENTED FOR REVIEW

1. Was Petitioner deprived due process of law when the
State court concluded contrary to "clearly established" United
States Supreme Court precedent that Petitioner has no liberty
interest in parole and then denied Petitioner's claims without
any evidentiary support in the record tending to establish
the Board of Parole Hearings' (hereafter "BPH, Board or Respondent")
allegation that the decision portion of the hearing could not
be transcribed?

-1-

2. Did the State Court's adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding?

3. Was Petitioner deprived of his Fifth and Fourteenth Amendment rights to due process when the Board disapproved and rescinded its September 24, 2004 finding that he was suitable for parole based solely on the fact that the Board lost the decision portion of the transcript from the hearing?

## STATEMENT OF THE CASE

Petitioner Fred L. Baker (hereafter "Petitioner") was convicted in Riverside County Superior Court of kidnap robbery, robbery, vehicle theft, attempted murder, grand theft, weapons use and weapons possession. He was sentenced on October 30, 1980, to seven years to life, consecutive to eight years plus three years in prison.

Petitioner's minimum eligible release date was set for July 31, 1994. On August 3, 1993, Petitioner appeared before the Board of Parole Hearings for his initial parole eligibility hearing. He was denied parole for one year. At a September 8, 1994, hearing, he was denied parole for another year. At a February 20, 1996, hearing, he was denied parole for two years. At a May 2, 1998, hearing, he was denied parole for one year.

-2-

1   At a May 1999, hearing, he was denied parole for two years.   At
2   an October 24, 2001, hearing, he was denied parole for one year.
3   At an August 5, 2003, hearing, he was denied parole for one
4   year.   Finally, at a September 24, 2004, hear, Petitioner was
5   found suitable for parole. (Exh. A.)
6       On September 28, 2004, Petitioner was summoned to the
7   counselors office to sign and receive the conditions of his
8   parole. (Exh. B.)
9       On November 30, 2004, after reviewing the transcript, the
10  Decision Review Unit alleged that due to an apparent malfunction
11  of the recording equipment, the decision portion of the hearing
12  could not be transcribed, and recommended disapproval of the
13  "proposed September 24, 2004 hearing decision and schedule a
14  rehearing on the next available calendar." (Exh. C.)   However,
15  on page 85 of the transcript, the transcriber noted in her
16  declaration that she had "transcribed tape(s) which total one
17  in number and cover a total of pages 1 through 84." (Board
18  Transcript "BT".)   She received no further tapes for transcript-
19  ion. (Exh. BT at p. 84.)
20      On December 14, 2004, the BPH$\frac{1}{}$ sitting in en banc, adopted
21  the Decision Review Unit's recommendations in full and rescinded
22  the September 2004 suitability decision. (Exh. D.)
23      On January 27, Petitioner filed a petition of Writ of Habeas
24  Corpus in the Monterey Superior Court challenging the Board
25  of Parole Hearings' disapproval/rescission of its September
26  2004 finding that he was suitable for parole.
27      On March 25, 2005, the Court asked the Board for informal
28  _____
    1.  Prior to July 1, 2005, the Board was known as the Board Prison Terms.

1    opposition to the habeas corpus petition.  (Exhibit E.)

2    After receiving the Respondent's opposition,[2] the Court

3    issued an order requiring Respondent to show cause why Petitioner

4    should not be granted the relief sought in his petition.  The

5    order included the following statement of issues:  "the Court

6    acknowledges the requirements of Penal Code § 3042 and its

7    applicability to Petitioner's claim.  However, it is important

8    to note that it was Respondent, rather than Petitioner, who

9    failed to record the 'Decision' portion of the hearing as

10   required by Penal Code § 3042.  The informal Response fails

11   to address this apparent inequity."  (Order, filed Aug. 23,

12   2005; Exh. H.)  Moreover, in so ruling, the superior court added

13   that "the most equitable solution would be to reschedule the

14   hearing before the same Board members with instructions to adopt

15   the existing transcript from the former hearing and recreate

16   their Decision to recommend parole based on that transcript

17   and their independent recollection."  (Id. at p. 2.)

18   Respondent requested and was given an extension of time

19   to file his return.  In the extension, Respondent informed the

20   superior court that a hearing had been rescheduled for October

21   4, 2005 in front of the same commissioners and "the outcome

22   could render Petitioner's claims moot."  (Exhibit I.)  Respondent

23   took advantage of the superior court's granting the extension

24   by conducting a de novo hearing, which resulted in a recommendation

25   against parole.  (Exhibit X.)

26   On October 7, 2005, Respondent requested the superior court

27   to advise the parties if it was going to modify the order to

28   2.  See Respondent's Informal Response (Exh. F) and Petitioner's Reply
     (Exh. G.)

Brief in Support of Writ
of Habeas Corpus

1   show cause, namely, whether Respondent should still address

2   why Petitioner's hearing should not be heard by the same Board

3   members with instructions to issued a decision recommending

4   parole, and also indicating that no response to the request

5   for an extension to file had been received. (Exhibit W. at

6   p. 2.)

7       On October 24, 2005, the court issued an order denying

8   Respondent's request that the court modify its Order to Show

9   Cause, and ordered Respondent to file a return on or before

10  November 24, 2005. In response to Respondent's question the

11  court noted, to the extent to which the transcript from the

12  September 24, 2004, hearing was incomplete and the portions

13  of the hearing that were not recorded present evidentiary issues

14  that may be addressed in Respondent's Return. Moreover, given

15  the fact that the transcript contains approximately eighty pages

16  of testimony, the Court remains interested in Respondent's

17  position as to why a de novo hearing (one which appears to have

18  reached a different conclusion) was necessary to correct

19  Respondent's failure to properly record the September 24, 2004,

20  hearing. (Exhibit J.)

21      On November 28, 2005, Respondent filed a return (Exh. K),

22  and on December 23, 2005, Petitioner filed a denial. (Exh. L.)

23  Subsequently, Petitioner filed a motion to amend the denial

24  and a request for judicial notice to include pages that were

25  inadvertently omitted (Exh. M) and Respondent filed an opposition

26  and objection.

27      On March 8, 2006 Petitioner filed a response to Respondent's

28

Brief in Support of Writ
of Habeas Corpus

1 | opposition to request for judicial notice and a response to

2 | Respondent's objection. (Exhibit W.)

3 | On June 5, 2006, the court issued an order following the

4 | filing of the return and traverse. (Exhibit N.) In the order

5 | the court explained that Respondent's reliance on Sections

6 | 3041(b), 3041.1, and 3042(b)-(c) for the proposition that the

7 | Board's action was proper, is in err. The sections cited by

8 | Respondent merely provides a process for the review of a parole

9 | hearing decision. The court then added "no mandate is set

10 | forth requiring a rehearing where, as here, the recording

11 | equipment malfunctions or staff simply neglects to produce all

12 | tapes for transcription." (Id. at p. 2.) After pointing out

13 | that a "hearing record is sufficient for the purposes of review

14 | whether it be made  by transcript or written summary," the court

15 | admonished that "Respondent failed to analyze or discuss the

16 | relevant equities of the matter." (Ibid.) Further, the court

17 | found that the petition contained pleading defects which must

18 | be corrected, and granted Petitioner leave to amend or supple-

19 | ment his petition by addressing facts and theories relevant

20 | to the Board's decision which were not expressly or implicitly

21 | raised in the petition. (Id. at p. 5.)

22 | On July 10, 2006, Petitioner filed an amended/supplemental

23 | petition. (Exhibit O.)

24 | On August 5, 2006, Respondent filed a request for

25 | clarification and, if appropriate, the issuance of an order

26 | to show cause. (Exhibit W.)

27 |

28 |

Brief in Support of Writ
of Habeas Corpus

1    On November 20, 2006, the court issued an order to show
2  cause directing Respondent to show cause why Petitioner should
3  not be granted the relief sought in his amended/supplemental
4  petition.  Moreover, the court once again placed Respondent
5  on notice of its failure to address the relevant equities of
6  the matter.  (Exhibit P.)

7    Respondent was granted an extension of time to file a
8  supplemental return by January 8, 2007.  (Exhibit Q.)

9    On December 29, 2006, the court on its own motion, granted
10  Respondent an extension of time to file a supplemental return
11  within 30 days of January 5, 2007.  (Exhibit R.)

12    On January 8, 2007, Petitioner filed a "Motion to Grant
13  Relief Requested in Petition for Writ of Habeas Corpus." (Exh. S.)

14    On February 1, 2007,$^{3/}$ the court denied Petitioner's "Motion
15  to Grant Relief requested in Petition for Writ of Habeas Corpus."
16  (Exhibit W at p. 3, lns 6-7.)

17    On February 7, 2007, Respondent filed a return to the
18  amended/supplemental petition.  (Exhibit T.)

19    On March 14, 2007, Petitioner was granted an extension of
20  time to file a supplemental denial on or before March 30, 2007.
21  (Exh. U.)  On March 29, 2007 Petitioner filed a supplemental denial.

22    On April 24, 2007, the court, on its own motion, granted
23  itself an extension of time to issue an order to and including
24  June 1, 2007, because of "complexity of the issues raised."
25  (Exh. V.)  On June 1, 2007, the petition was denied.  (Exh. W.)

26    On September 12, 2007, the Sixth Appellate District Court
27  of Appeal denied the petition (Exh. Z.) and the California
28  Supreme Court denied review on Nov. 28, 2007 .

    3.  The Honorable Marla O. Anderson presided over this case from January
2005 until 2007, but was removed prior to rendering a final decision.

                                    -7-              Brief in Support of Writ
                                                     of Habeas Corpus

## SUMMARY OF ARGUMENT

1    In Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,

2    442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S.

3    369 (1987), the United States Supreme Court established in 1979

4    and reaffirmed in 1987 that "a state's statutory scheme, if

5    it uses mandatory language, creates a presumption that parole

6    release will be granted when or unless certain designated

7    findings are made, and thereby gives rise to a constitutional

8    liberty interest." Id. at 12; Allen, 482 U.S. 377.

9        In accordance with the United States Supreme Court's

10   decision in Greenholtz and Allen, the California Supreme Court

11   has indicated that California "prisoners possess a protected

12   liberty interest in connection with parole decisions rendered

13   by the Board." See In re Rosenkrantz, 29 Cal.4th 616, 661 (2002).

14       Here, not only did Petitioner demonstrate a liberty interest

15   in parole release, but also there were other fundamental core

16   due process issues being pursued on appeal: (a) whether the

17   Board's determination was arbitrary and capricious; (b) whether

18   the state court failed to follow the Supreme Court's instructions

19   in Allen holding that parole release will be granted unless

20   certain designated findings are made; and (c) whether the state

21   court failed to follow the Supreme Court's instructions in

22   Hill v. Superintendent, 472 U.S. 445 regarding that there must

23   be some evidence in the record to support the conclusion reached

24   by the board.  Nevertheless, relief was denied in this case

25   even though the State Court determined that Petitioner was

26   not responsible for the parole hearing being transcribed  (Exh.

-8-

W at p. 4) and that the apparent inequity was created by
Respondent's neglect to produce all tapes for transcription.
(Exh. N at p. 2.)  Petitioner was clearly prejudice by
Respondent's failure because, if the Board had fulfilled its
duty of producing the record, it is reasonably probable, indeed
almost certain, that Petitioner would have received a full and
fair determination of his parole application in light of the
evidence presented to the granting panel.   Thus, finalization
of the parole grant and his ultimate release from prison.

    Moreover, while federal courts have established a long
standing practice of paying great deference to the views of
those courts who are familiar with the intricacies and trends
of local law (Bishop v. Wood, 426 U.S. 341, 246 n. 10 (1976)),
the Ninth Circuit warned that the state courts may not interpret
their law in such an arbitrary manner that the interpretation
is nothing but an evasion of the federal due process require-
ments.  See Peltier v. Wright, 15 F.3d 860, 862 (9th Cir. 1994).

    The State's highest court explained "[t]o impose a
standard of review that is less stringent than the 'some
evidence' test ... would permit the Board to render a decision
without any basis in fact."  See Rosenkrantz, supra, 29 Cal.4th
at p. 657.  The Court admonished that "[s]uch a decision would
be arbitrary and capricious, thereby depriving the prisoner
of due process of law."  Id.  Accordingly, the state court's
interpretation of state and federal law to deny the petition
was untenable in light of the evidence and completely eviscerates
the federal "some evidence" standard.  The writ should be granted
directing the State to release Petitioner forthwith.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF RELIEF**

I

PETITIONER WAS DEPRIVED DUE PROCESS OF LAW WHEN THE
STATE COURT CONCLUDED CONTRARY TO "CLEARLY ESTABLISHED"
UNITED STATES SUPREME COURT PRECEDENT THAT PETITIONER
HAS NO LIBERTY INTEREST IN PAROLE AND THEN DENIED
PETITIONER'S CLAIM WITHOUT ANY EVIDENTIARY SUPPORT IN
THE RECORD TENDING TO ESTABLISH THE BOARD OF PAROLE
HEARINGS' ALLEGATION THAT THE DECISION PORTION OF THE
HEARING COULD NOT BE TRANSCRIBED.

A.  **Petitioner has a Liberty Interest in Parole Under the**
    **Due Process Clause of the United States Constitution.**

The Due Process Clause of the Fourteenth Amendment prohibits
state action that deprives a person of life, liberty, or
property without due process of law.  See U.S. Const., 14th
Amendment.  A person alleging a due process violation must
demonstrate deprivation of a constitutionally protected liberty
or property interest, and a denial of adequate procedural
protection.  See Kentucky Dep't of Corrections v. Thompson,
490 U.S. 454, 459-460 (1989); McQuillion v. Duncan, 306 F.3d
895, 900 (9th Cir. 2002).  The United States Supreme Court
recognizes a federal Due Process liberty interest in parole.
Greenholtz, supra, 442 U.S. at p. 7.

California's parole scheme gives rise to a cognizable
liberty interest in release on parole because Penal Code section
3041 uses mandatory language that parallels the Nebraska and
Montana statutes addressd in Greenholtz and Allen.  "Section
3041 of the California Penal Code creates in every inmate a

Brief in Support of Writ
                                        of Habeas Corpus

1  cognizable liberty interest in parole which is protected by

2  the procedural safeguards of the Due Process Clause."  See

3  Biggs v. Terhune, 334 F.3d 910, 914-915.

4       In the present case, the State court ruled that Petitioner

5  did not have a due process liberty interest in parole because

6  the parole panel's grant was a preliminary decision.  (Exh.

7  W at p. 6.)  This position is contrary to the weight of authority

8  holding otherwise.  See Irons v. Carey, 479 F.3d 658, 662

9  (9th Cir. 2007).  In fact, the Ninth Circuit restated its

10 position in Sass v. California Bd. of Prison Terms, 461 F.3d

11 1123, 1127 (9th Cir. 2006) that the "liberty interest is created,

12 not upon the grant of a parole date, but upon the incarceration

13 of the inmate."  Thus, the State court erroneously deprived

14 Petitioner of due process as defined by Greenholtz and Hill, infra.

15      Petitioner acknowledges "[t]here is no constitutional or

16 inherent right of a convicted person to be constitutionally

17 released before the expiration of a valid sentence."  Greenholtz,

18 supra, 442 U.S. at p. 7.  However, "a state's statutory scheme,

19 if it uses mandatory language, 'creates a presumption that

20 parole release will be granted' when or unless certain designated

21 findings are made, and thereby gives rise to a constitutional

22 liberty interest."  Allen, supra, 482 U.S. at pp. 377-78;

23 Greenholtz, supra, 442 U.S. at p. 12.  Furthermore, when as

24 here, a prisoner has been found suitable for parole, the

25 "parole date heightens that interest."  McQuillion, supra,

26 306 F.3d at p. 903.  "[T]he words 'parole granted,' create[s]

27 a specific expectation."  See also Rosenkrantz, 29 Cal.4th

28                           -11-

1  at p. 657 (noting that an inmate for whom a parole date has

2  not been set possesses less of an expectation of liberty than

3  one for whom a release date has been set).

4      The state statutory provision governing parole hearings

5  provides, in part, that "[t]he panel or the board shall set

6  a release date unless it determines that the gravity of the

7  current convicted offense or offenses ... is such that

8  consideration of public safety requires a more lengthy period

9  of incarceration for this individual, and that a parole date,

10  therefore, cannot be fixed ..."  See Penal Code § 3041, subd.

11  (b).  The Legislature's use of the words "shall" and "unless"

12  makes the provisions mandatory, thus conferring a liberty

13  interest in parole hearings.  Allen, supra, 482 U.S. at p. 376;

14  Greenholtz, supra, 442 U.S. at p. 11; Sass, supra, 461 F.3d

15  at pp. 1127-118; see also In re Dannenberg, 34 Cal.4th 1061,

16  1093 (2005) (explaining that the Legislature recently added further

17  limiting factors to the statute for "the apparent purpose of

18  providing additional protection to indeterminate life inmates

19  ... who have received favorable suitability determinations").

20      Accordingly, Petitioner strongly contends, contrary to

21  the state court's opinion, it is uniformly settled that he has

22  a constitutionally protected liberty interest in release on

23  parole under the Fourteenth Amendment's due process clause.

24  Greenholtz, 442 U.S. at 7; Allen, 482 U.S. at 373; Biggs, 334

25  F.3d at 914; Sass, 461 F.3d; Irons, 479 F.3d 662; McQuillion,

26  306 F.3d at 898, 901-902.  Thus, the state court's position

27  runs contrary to "clearly established" federal law and must

28  be rejected.

Brief in Support of Writ
of Habeas Corpus

**B.**  **The State Court Violated the "Some Evidence" Standard and Petitioner's Right to Due Process When It Denied Relief Without Any Evidentiary Support in the Record.**

In addition, there is a federal constitutional issue going to the sufficiency of the evidence governing administrative hearings.  In <u>Hill</u>, 472 U.S. 445, the Supreme Court considered the constitutional validity of such evidence.  The Court held the evidence before the board valid, but ruled:

> "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.  Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is <u>any evidence in the record that could support the conclusion reached by the [parole] board</u>."

id. at pp. 455-456; citations and internal quotation marks omitted; emphasis added.  Additionally, "the evidence underlying the board's decision must have some indicia of reliability." <u>McQuillion</u>, supra, 306 F.3d at p. 904.

In assessing whether or not there is "some evidence" to overturn the decision of a parole panel finding an inmate suitable for parole, the State Court is required to consider the statutes and regulations which guide the Board in its review of the granting panel's decision.  <u>Rosenkrantz</u>, supra, 29 Cal.4th at p. 658; <u>Dannenberg</u>, supra, 34 Cal.4th at p. 1092; <u>Allen</u>, supra, 482 U.S. at pp. 377-380.

As material, subdivision (b) of Penal Code section 3041 provides:

> "any decision of the parole panel finding an inmate suitable for parole shall  become final within 120 days of the hearing ...unless the board finds that

-13-

1   the panel made an error of law, or that the panel's
    decision was based on an error of fact, or that new
2   information should be presented to the board,   any
    of which when corrected   or considered by the board
3   has  a  substantial  likelihood  of  resulting  in a
    substantially different decision upon rehearing."

4

5   Id.  The pertinent Board regulations adopts this view of the

6   statute.  See Cal. Code of Regs., ("CCR") tit. 15, § 2042.

7       In the case at bar, the Board based its 2004 determination

8   of disapproving the panel's finding of suitability "apparently"

9   on an alleged "malfunction of the recording equipment."  Exh(s)

10  C & D.  Consequently, the Board also concluded that "the

11  decision portion of the hearing cannot be transcribed."  Ibid.

12  To support its position the Board cite to Penal Code section

13  3041(b) and CCR 2042, supra, for the proposition that "an error

14  of law is a basis for disapproving a decision."  Exh. K at p.

15  6, lns 20-25.

16      Interestingly enough, in spite of making a factual finding

17  that "[n]o mandate is set forth requiring a rehearing where,

18  as here, the recording equipment malfunctions or staff simply

19  neglects to produce all tapes for transcription" (Exh. N at

20  p. 2, lns 12-14), as well as, the acknowledgment of unresolved

21  evidentiary issues,[4/] the State Court made no inquiry into

22  whether there was "some evidence" from which the conclusion

23  of the Board could be deduced as required by Hill.  Nor did

24  the State Court make any other inquiry or seek to resolve

25  questions of reliability of the evidence underlying the Board's

26  _____
    4.  "Given the fact that the transcript contains approximately eighty
27  pages of testimony, the court remains interested in Respondent's position
    as to why a de novo hearing (one which appears to have reached a different
    conclusion) was necessary[.]"  Exh J.

28
                              -14-

1  claim of malfunctioning recording equipment and its proclaimed

2  inability to transcribe the decision portion of the hearing, as

3  separately required by McQuillion.[5] Exh. J.

4      On this record it is hard to conceive that any member of

5  the Board reviewed the recording equipment to determine whether

6  or not the device operated properly. Particularly, where as

7  here, no declarations or any other documentiary evidence has been

8  submitted to the State Court in support of the claim.[6] To the

9  contrary, Petitioner has shown at several points in the September

10 2004, hearing transcripts that Deputy Commissioner Rolando Mejia

11 recorded two tape(s) via his statements that: "We're now on

12 the record." BT at p. 1, lns 1-2. At the end of side A of

13 the first tape the Commissioner noted "Okay, we're now on side

14 B of this hearing." BT at p. 43, lns 26-27. Once side B was

15 completed, Commissioner Mejia advised "Okay, we've got to go

16 to another tape." BT at p. 84, lns 3-4. The second tape was

17 then asserted into the recording device and the hearing was

18 continued until its completion. See (Pet. Decl(4)).

19 ─────────────────────

20     5. Nowhere in the transcriber's declaration does she indicate a problem
    with   transcribing tape(s) or being conferred with concerning the tran-
    scription of any tape(s). (BT at p. 85) However, after completely
21 transcribing the tape that contained 84 pages of testimony she noted that
    "no further tapes were received for transcription." Id. at p. 84.
22
      6. In the declaration of Daniel Moeller, then counsel for the Board,
23 he declares that he reviewed the proposed decision and signed the
    recommendation on behalf of the Decision Review Unit. He further noted that
24 "[w]hen as [here], a significant portion of the transcript is unable to be
    transcribed, the hearing is not in accordance with the law." He however,
25 omits any knowledge of who or how it was determined that the decision
    portion of the transcript was unable to be transcribed, or that the recording
26 equipment malfunctioned. (Exh. K [Decl. of Moeller, attached thereto].)
    "The only existing written documents relating to Petitioner's 2004, parole
27 suitability hearing" submitted to the State Court were the "BPT-1001 Face
    Sheet, miscellaneous Decision dated December 20, 2004, and the BPT-1005
28 Proposed Decision." Exh. W at p. 4, lns 18-21.

1    Moreover, it has long been recognized that parole release

2  is an "equity-type judgment" (Greenholtz, 442 U.S. at 8; Allen,

3  482 U.S. at 357) and that when exercising its discretion, the

4  Board's decision must not be "otherwise arbitrary." Hill, supra,

5  472 U.S. at p. 457; Irons, supra, 479 F.3d at p. 662. Thus,

6  in allowing the Board to justify its actions simply by reciting

7  supposed facts corresponding to the specified factors without

8  determining whether "some evidence" existed to support "cause",

9  the State Court's ruling was not only contrary to "Clearly

10 Established" law as defined by Greenholtz, Allen, and the

11 evidentiary standard articulated by Hill, but also, the State

12 Court deprived Petitioner of due process with respect to

13 affirming a Board decision that was otherwise arbitrary.

14    Accordingly, the California Supreme Court has ruled that

15 a decision like the one at issue here, is "arbitrary and

16 capricious and, because it affect[s] a protected liberty

17 interest, violate[s] established principles of due process of

18 law." Rosenkrantz, supra, 29 Cal.4th at p. 665. Likewise,

19 the Ninth Circuit has also held that such a decision "violate[s]

20 clearly established federal law because it [allows] a state

21 [to] interfere with a liberty interest in parole without support

22 or in an arbitrary manner." Sass, supra, 461 F.3d at pp.

23 1128-1129. Consequently, the sole issue before this Court

24 on the "some evidence" standard, is did the Decision Review

25 Unit have some evidence to overturn parole. Petitioner

26 submits the DRU's finding was not supported by "some evidence"

27 and, as such, violated constitutional due process.[7]

28
_____
7. Hereafter the DRU is interchangeable with "Board Staff."

Brief in Support of Writ
of Habeas Corpus

-16-

## II

**THE STATE COURT'S ADJUDICATION RESULTED IN A DECISION THAT WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.**

It is well-established that "a parole applicant's right to 'due consideration' cannot exist in any practical sense unless there also exist a remedy against their abrogation." See In re Sturm, 11 Cal.3d 258, 268 (1974), citing Marbury v. Madison, 5 U.S. (Cranch) 137, 161-163, 2 L.Ed. 60 (1803). Thus, in accordance with the United States Supreme Court's decision in Marbury, the California Supreme Court has indicated that due process requires that there be "a concomitant right to an available remedy." Sturm, supra, 11 Cal.3d at pp. 268-268.

Furthermore, in the parole context, the state court specifically stated that "the basic remedy to correct arbitrary [Board] action is the writ of habeas corpus." Sturm, supra, 11 Cal.3d at p. 269; see also Rosenkrantz, supra, 29 Cal.4th at p. 655.

Accordingly, when the Board disapproved and rescinded its September 24, 2004, finding that Petitioner was suitable for parole based solely on the fact that the Board lost the decision portion of the transcript from the hearing, Petitioner "prosecuted a writ of habeas corpus" in the state court "to inquire into the cause" (In re Romero, 8 Cal.4th 728, 737 (1994), thus, "provid[ing] the state courts with a 'fair opportunity' to apply legal principles to the facts bearing upon his constitutional claim." Anderson v. Harless, 459 U.S. 4, 6 (1982); Exh. W at p. 1, lns 17-19.

Brief in Support of Writ
of Habeas Corpus

1    The rules that govern the manner in which state courts must
2  exercise their authority in habeas corpus matters are set forth
3  "in sections 1473 through 1508 of the Penal Code. <u>Romero</u>, supra,
4  8 Cal.4th at p. 737 (holding that "in exercising this original
5  jurisdiction, the Courts ...'must abide by [these] procedures".).
6    As material, Penal Code section 1484 provides, as pertinent,
7  that once the order to show cause has been issued and the return
8  has been filed:

> "[t]he Court ... must ... dispose of such case as the
> justice of the case may require, and ... to do and
> perform all other acts and things necessary to a full
> and fair determination of the case."

12 <u>Id</u>. In <u>In re Harris</u>, 5 Cal.4th 813 (1993) the California Supreme
13 Court explicitly noted that section 1484 supra, is analogous to
14 28 U.S.C. § 2243 which states that "[t]he court shall summarily
15 hear and determine the facts, and dispose of the matter as law and
16 justice require." Id. at p. 851.  The Supreme Court then concluded
17 that "the Penal Code thus contemplates that a court, faced with
18 a meritorious petition for writ of habeas corpus, should consider
19 factors of justice and equity when crafting an appropriate
20 remedy." <u>Ibid</u>; citing, <u>Carafas v. LaVallee</u>, 391 U.S. 234, 239
21 (1968)(emphasizing the flexible nature of federal habeas remedies
22 under applicable statutes); <u>Andrews v. United States</u>, 373 U.S.
23 334, 339 (1963)(same).

24    Here, after it had been determined that Petitioner stated
25 sufficient facts in both his original petition (Exh. W at 1) and
26 his amended/supplemental petition (Exh. W at 2) to establish a
27 prima facie case for relief, the State court denied relief
28

Brief in Support of Writ
                   of Habeas Corpus

1  without requiring Respondent to file a return that "allege facts

2  tending to establish the legality of [Petitioner's] detention

3  [or] ... disput[ing] the factual allegations contained in the

4  petition or traverse." See <u>Bland v. California Dept. of</u>

5  <u>Corrections</u>, 20 F.3d 1469, 1474 (9th Cir. 1994); Exh. W at p. 6;

6  Pet. Decl(1) at para. 8.

7  Thus, the State court's decision should not be presumed

8  correct because (a) the factual dispute was not resolved in the

9  state court (Pet. Decl(1), para's 3-6); and (b) the material

10  facts were not adequately developed. See Pet. Decl(1) para's 2,

11  8; Decl(3) para,s 1, 4, 5, 6, & 8; see also <u>Oxborrow v. Eiken-</u>

12  <u>berry</u>, 877 F.2d 1395, 1399 (9th Cir. 1989) (noting that federal

13  "deference to the [state] Court is suspended only upon a finding

14  that the Court's interpretation [of state law] is untenable or

15  amounts to a subterfuge to avoid federal review of a constitut-

16  ional violation.").

17  Furthermore, in denying relief, the State court specifically

18  noted that it considered the declarations of Debra Levorse and

19  Sanda Maciel and found that Respondent has shown that it would

20  be impossible to recreate the September 24, 2004 panel decision

21  granting parole based on the incomplete transcript and other

22  existing documents."[8/]  Exh. W at p. 4, lns 21-24.  However, in

23  light of the fact that there is no nexus between the State

24  _____

25  8.  The declarations of Debra Levorse and Snadra Maciel were not
submitted to address the re-creation of the panel's decision per section 2254

26  of the California Code of Regulations, but were submitted to address "which
forms [were] made available to the commissioner's for use at Petitioner's

27  September 2004 parole suitability hearing." (See Order, filed November 20,
2006 [Exh P] at p. 2).

28

Brief in Support of Writ
                                          of Habeas Corpus

1   court's conclusion and any of the statements of the declarants,

2   the court's findings "are indeed erroneous" and "lack even fair

3   support in the record." (Marshall v. Longberger, 459 U.S. 422, 432

4   (1983); Bland, supra, 20 F.3d at p. 1474.    Therefore, the State

5   court's findings must be rejected.

6   **A.   15 CCR § 2254 is the Means to Recreate the Missing**

7   **Portion of the September 2004 Hearing Transcript.**

8   Section 2254 states that:

9   "A record (a verbatim transcript, tape recording or
    written summary) shall be made of all hearings. The
10  record of the hearing shall include or incorporate
    by reference the evidence considered, the evidence
11  relied on, and the findings of the hearing panel
    with supporting reasons."

12

13  This view was adopted from the statutory provisions of

14  subdivision (b) of Penal Code 3042 which provide: "The Board of

15  [Parole Hearings] shall record all those hearings and transcribe

16  recordings of those hearings within 30 days of any hearing[,]"

17  and subdivision (c) of the statute which provides, as pertinent,

18  that "the presiding hearing officer shall state his or her

19  findings and supporting reasons on the record."

20      In its order of June 5, 2006, the State court clearly

21  pointed out Respondent's errs, and distinguished the difference

22  between the statutory right to review a parole grant and the

23  means of recording the entire hearing process.  Specifically,

24  the Court concluded that Respondent erred in asserting "that

25  Sections 3041(b), 3041.1, and 3042(b)-(c)" mandates "a rehearing

26  where, as here, the recording equipment malfunctions or staff

27  simply neglects to produce all tapes for transcriptions."   Exh.

28

-20-    Brief in Support of Writ
of Habeas Corpus

1  N at p. 2.  Rather, the State court found that the "sections

2  cited by Respondent merely provide a process for review of a

3  grant of parole."$\underline{9/}$  <u>Ibid.</u>, lns 11-13.

4      Moreover, while drawing directly from sections 2254 of the

5  Code of Regulations, the State court explained that "[a] record

6  is sufficient for review whether it be made by transcript or

7  written summary."  <u>Ibid.</u>, lns 14-15.  Notably, the Court placed

8  emphasis on "<u>incorporating by reference</u> the evidence considered,

9  the evidence relied on, and the findings of the hearing panel

10 with supporting reasons."  <u>Ibid.</u>, lns 16-18.

11      Thus, in exercising its discretion pursuant to Penal Code

12 section 1484, the State court concluded that "the most equitable

13 solution would be to reschedule the rehearing before the same

14 Board members with instructions to adopt the existing transcript

15 from the former hearing and recreate their Decision to recommend

16 parole based on that transcript and their independent recollect-

17 ion."  <u>Ibid.</u>, lns 4-7; see also Exh(s) H at p. 2 & P at p. 1.

18      Accordingly, the means to recreate the September 04' panel's

19 decision was always available to the Board staff through 2254,

20 but they chose not to avail themselves of this remedy and

21 instead, continued to defy the directives of the court.  In fact,

22 Respondent has repeatedly failed to "analyze or discuss the

24      9.  Penal Code section 3041(b) states that "any decision of the parole panel finding an inmate suitable for parole shall become final within 120 days
25 of the date of the hearing.  During that period, the board may <u>review the panel's decision</u>," (<u>Dannenberg</u>, supra, 34 Cal.4th at 1092) and 3041.1 of the
26 statute states that "the Governor shall have the power to request <u>review of any decision concerning the grant or denial of parole</u>. (emphasis added.)

-21-

1 equities of the matter" despite many warnings from the State

2 court.  See Exh(s) H at p. 1, lns 20-23; J at pp. 1-2; N at p.

3 2, ln 19.  Consequently, "the apparent inequity created by

4 Respondent's interpretation of the law" (Exh N at p. 2, ln 3),

5 further exacerbates the harm done to Petitioner by the Board

6 because it resulted in the time served being in excess of even

7 the "twelve years beyond his minimum eligible parole date of

8 July 31, 1994" noted by the State court.  Exh. P at p. 1, lns

9 16-17.

10    **B.    The Missing Portion of the September 04' Hearing**

11        **Recreated Pursuant to 2254 Regulatory Provisions.**

12        Contrary to the Attorney General's contention that "it would

13 be impossible to recreate the September 24, 2004 Board decision

14 granting parole" (Exh T at p. 5, lns 16-17), the Board panel

15 did in fact utilized 2254 to recreate the decision portion of the

16 hearing.$\underline{10/}$  See Exh. X.  At the hearing, the Panel specifically

17 "incorporat[ed] the summary of the crime from the [existing]

18 transcript" (Id. at pp. 7 & 14; Exh. N at 2, lns 4-5; 15 CCR §

19 2254) and the documents created or relied upon by the Board,

20 including a May 25, 04' Board Report entailing parole plans

21 (Exh. X at pp. 9-10), post-conviction factors (Id. at p. 11,

22 lns 1-19), and a Psych Report prepared on April 29, 2005, by

23 Dr. Steward.  Id. at pp. 11-14; CCR 2254; Exh. N at p. 2, lns

24 5-6.

25    _____

26    10.  Petitioner is citing Exhibit-X for the limited purpose of showing
that section 2254 of the Code of Regulations was sufficient to recreate a
27 record, as Ordered by the State court.

28

-22-                Brief in Support of Writ
                       of Habeas Corpus

1    However, while the panel noted at the outset of the proceed-

2 ing that it was "going to in compliance with the court order, go

3 forward with the hearing" (Exh. X at p. 6, ln 27 & p. 7, lns

4 1-2-), they clearly did not proceed in accordance with that order

5 as they conducted a de novo hearing, as is evident from the

6 admittedly different testimony from the victim (Id. at pp.

7 28-30), a new argument from a different D.A., and the following

8 exchange between counsel for Petitioner and presiding commission-

9 er Susan Fisher:

10    ATTORNEY TARDIFF:  I would just like to clarify
     something.  Is the transcript that's being
11    incorporated into this hearing, does that consist
     of an 84 page transcript from September 24, 2004?

12

13    PRESIDING COMMISSIONER FISHER:  If my understanding
     of the court order is correct, that's what they're
14    instructing us to do.  What I have specifically
     incorporated for the purpose of this hearing is the
15    summary of the offense, and I'll leave it to our
     legal department.

16

17    ATTORNEY TARDIFF:  All right.  We'll I just --

18    PRESIDING COMMISSIONER FISHER:  What the Court is
     ordering.  It does - that's what it looks like to me.

19

20    ATTORNEY TARDIFF:  84 pages of a transcript from
     September of '04?

21

22    PRESIDING COMMISSIONER FISHER:  Yes.

23 Exh. X at p. 14, lns 10-25. [11]/

24

_____

25    11.  The State court questioned the Board's failure to fully comply with
its original order of August 23, 2005, and in an interim order directed
26 Respondent to address "why a de novo hearing (one which appears to have
reached a different conclusion) was necessary to correct Respondent's failure
27 to properly record the September 24, 2004 hearing." (Exh. J at p. 1, lns
23-24 & p. 2, lns 1-2.)

28                                   -23-

1    Petitioner strongly contends, had the Board followed the

2  State court's original order and provided "the same [panel]

3  members with instructions to issue a Decision recommending

4  parole" (Exh. H at p. 2), it would have cured the due process

5  inequity created by Respondent and made available to both

6  the public (Penal Code § 3042(b)) and the Governor (Penal Code

7  § 3041.1) for review the Panel's decision including its findings and

8  reasons supporting the decision. Penal Code § 3042(c). In

9  addition, it would have preserved Petitioner's right to "due consideration"

10  (In re Sturm, 11 Cal.3d 258, 268 (1974)), and his interest in

11  being paroled "when the findings prerequisites to release [were]

12  made." Allen, supra, 482 U.S. at p. 381; Rosenkrantz, supra,

13  29 Cal.4th at p. 654.

14    Finally, in denying relief, the State court noted that

15  "a rehearing was held and that "the same panel concluded that

16  public safety concerns required finding Petitioner unsuitable

17  for parole." Exh. W at p. 6, lns 10-12. Not only are these

18  alleged facts indeed erroneous, because nowhere in the rehearing

19  transcript does the panel expressly states that Petitioner is a

20  threat to public safety (Exh. X at pp. 31-33), but the denial

21  is in conflict with California law which dictates that "the Board

22  must apply detailed standards when evaluating whether an

23  individual inmate is unsuitable for parole on public safety

24  grounds." Dannenberg, supra, 34 Cal.4th at 1095, fn 16.[12]/

25  ───────────────────────────────

26    12. The State court's denial fails to acknowledge that the hearing results were in conflict with the court order instructing the Board "to adopt the existing transcript from the former hearing and recreate their decision to

27  recommend parole based on that transcript and their independent recollection" (Exh. H at p. 2.), as well as, contrary to the evidence indicating that Dixon

28  was shot by "both Canado and [Petitioner]." (BT at 14:22-25; Pet. Decl(2)).

1                                    III

2  PETITIONER WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT
   RIGHTS TO DUE PROCESS WHEN THE BOARD DISAPPROVED AND RESCIND-
3  ED ITS SEPTEMBER 24, 2004 FINDING THAT  HE  WAS  SUITABLE FOR
   PAROLE  BASED  SOLELY  ON   THE   FACT  THAT  THE  BOARD LOST THE
4  DECISION PORTION OF THE TRANSCRIPT FROM THE HEARING.

5          As demonstrated, the mandatory language of subdivision (b)

6  of Penal Code Section 3041 imposes an affirmative obligation to

7  grant parole, creating a legally cognizable liberty interest in

8  parole and a presumption that parole release will be granted if

9  certain conditions are met.  McQuillion, 306 F.3d at pp. 901-902;

10 Biggs, 334 F.3d at p. 915.  Moreover, once parole has been

11 granted, California law provides that the "decision finding an

12 inmate suitable for parole is final unless overturned by the full

13 Board within 120 days [for 'good cause']."  Penal Code § 3041(b);

14 Dannenberg, 34 Cal.4th at p. 1092.

15         "Good Cause" for disapproval includes conduct enumerated in

16 section 2042 of the California Code of Regulations, which states

17 "(1) the panel made an error of law; (2) the panel's decision was

18 based on an error of fact; or (3) that new information should be

19 presented to the board, any of which when corrected or considered

20 by the board has a substantial likelihood of resulting in a

21 substantially different decision upon rehearing."[13/]  Dannenberg,

22 34 Cal.4th at 1092 (referencing amended Penal Code § 3041(b)).

23 Furthermore, under Board statutes and regulations, the Board's

24 findings had to be based upon the law the Panel was required

25 ────────────────────────

26     13.  Black's Law Dictionary (cent. ed. 1991) most pertinently defines
   "error of law" as "an error of the [panel] in applying the law to the case..."
27 Id., at p. 377, col. 2; see also Apprendi v. New Jersey, 530 U.S. 466, 492
   fn. 17 (2002), citing approvingly to "most common definitions" of Black's Law
   Dictionary.

28                                -25-
                                            Brief in Support of Writ
                                              of Habeas Corpus

1  to use in finding Petitioner suitable for parole. <u>Rosenkrantz</u>,

2  29 Cal.4th at pp. 654-655; 15 CCR §§ 280, 2281(a)-(d), 2282(c).

3      **A.** <u>**The September 2004 Hearing Panel's Decision**</u>.

4      The 2004 Panel reached its finding of suitability for parole

5  after an approximately three-hour hearing. At the hearing the

6  Panel noted that the proceedings were being conducted pursuant to

7  Penal Code Sections 3041 and 3042 and the Rules and Regulations

8  of the Board of [Parole Hearings] governing parole consideration

9  hearings for life inmates. BT at p. 5. The Panel then addressed

10  the particulars of the governing criteria and guidelines, noting that:

11      "the purpose of the hearing today is to consider again the crimes
that you were committed for, your prior criminal and social

12  history, and your behavior and programming since your commitment
offense. We have had the opportunity to review your files and

13  your prior transcripts, and we'll give you the opportunity to
make any corrections that you need to today, all right. [¶]We're

14  going to be deciding today as to your suitability. If we do
find you suitable today we'll explain to you also today what the

15  length of your confinement will be. [¶]Prior to recessing to
deliberate we're going to give the District Attorney and your

16  attorney and you the opportunity to make a statement about your
suitability. And then once you've done that we'll allow Mr.

17  Dixon to make his statement. After that is completed we will
have everyone leave the room. We'll turn off the camera here

18  and we'll deliberate. As soon as we have a decision we'll bring
you all back in, okay. [¶]The California Code of Regulations

19  state that regardless of the time served a life inmate shall
be found unsuitable for and denied parole if in the judgment of

20  the Panel the inmate would pose an unreasonable risk of danger
to society if released."

21  

22  Id. at pp. 5-6. The Panel then discussed with Petitioner his

23  entitlement to "a timely notice of the hearing, the right to

24  review [his] central file, the right to present relevant

25  documents, [and] the right to an impartial panel." Id. at pp.

26  6-7. Prior to explaining the appeals process, the Panel stated

27  "we're going to give you a written copy today of our tentative

28                          -26-

1 decision," and further advised that the decision will become final
2 within 120 days. In addition, the Panel conveyed to Petitioner
3 that "a copy of the decision and transcript will be set to you."
4 BT at p. 7. Thus, the granting Panel explicitly stated what it
5 intended to discuss, and a review of the transcript provides
6 undisputed proof of what it had discussed. At the conclusion of
7 the hearing, the Panel found Petitioner suitable for parole and
8 no longer posing an unreasonable risk or danger to public safety.
9 The Panel used its regulatory matrix (15 CCR 2282(c)) for setting
10 the based term at 180 months (15 yrs) and calculated the total
11 period of confinement at 188 months (15 yrs, 8 mos). Petitioner
12 was then give a copy of the proposed Decision with the affixation
13 "PAROLE GRANTED do not release pending decision review" printed
14 thereupon. See Exh. A; Pet. Decl(4) at para(s) 3, 4, 6 & 7.

15        In Rosenkrantz, the California Supreme Court reaffirmed its
16 position that the statutes and regulations cited by the Panel are
17 indeed the law governing parole board decisions, and that once
18 the Board has "take[n] into account all pertinent information and
19 input about a particular case" and determined based upon the
20 "detailed standards" that the inmate no longer poses a threat to
21 public safety," the "Board must grant parole." 29 Cal.4th at pp.
22 653-54; Dannenberg, 34 Cal.4th at 1078-80, 1098; Allen, 482 U.S. at 377-78.

23        Accordingly, the relevant question here, is whether there is
24 any evidence to substantiate the Board's ultimate inference that
25 the Panel made an error of law, and if so, did "the authority
26 make it clear that it would have reached the same decision absent
27 the error." See Dannenberg, supra, 34 Cal.4th at p. 682 (holding

28
                                  -27-
                                              Brief in Support of Writ
                                               of Habeas Corpus

1  that "[a] reviewing court may uphold a parole authority's

2  decision, despite a flaw in its findings, if the authority has

3  made it clear it would have reached the same decision even

4  absent the error"); Rosenkrantz, supra, 29 Cal.4th at p. 682

5  ("same").  The record in this case simply will not permit such

6  a conclusion.  See Pet. Decl(4) at para 3.

7      Conversely, on this record, the "error of law" basis for

8  good cause on which the Decision Review Unit ("DRU") and the

9  En Banc Board purported to have acted, irrefutably reflects

10  in actual fact, that the "[disapproval and] rescission was an

11  abuse of discretion" (In re Powell, 45 Cal.3d 894, 904 (1988))

12  because neither the DRU or the Board operated within the limiting

13  construction of the law, nor avail themselves of mandated

14  available remedies, and both "acted 'without information [and]

15  on mere personal caprice.'" Powell, supra, 45 Cal.3d at p. 904,

16  quoting In re Spence, 36 Cal.App.3d 636, 639-640 (1974).

17      **B.**    **The Board Staff's Review of the September 04'**

18          **Hearing Transcript and Finding of Suitability.**

19      When "reviewing" a decision rendered at a parole board

20  hearing, the law dictated that "the board staff shall review the

21  information available to the panel that made the decision"

22  (15 CCR § 2042) and must also "consult with the commissioners

23  who conducted the parole consideration hearing." Dannenberg,

24  supra, 34 Cal.4th at p. 1092; Penal Code § 3041(b).  Moreover,

25  due process of law requires the Board's staff to observe the

26  statutory procedural "safeguards" which protects "against serious

27  risk of errors." Greenholtz, supra, 442 U.S. at p. 15.

28
                          -28-        Brief in Support of Writ
                                        of Habeas Corpus

1    However, instead of fulfilling its duty of reviewing the
2  information made available to the September 04' hearing Panel
3  members that made the decision, the Board staff overturned the
4  Panel's finding of suitability based on piecemeal information and
5  without ever conferring with the Panel to determine what happen
6  to the second tape. BT at p. 84; Exh(s) C & D.

7    Petitioner strongly contends, after alleging a problem
8  concerning the recording equipment and tapes, the board staff
9  had a responsibility to consult not only with the commissioners
10 who presided over the case,[14] but also other staff members to
11 establish the chain of custody regarding the missing tape.
12 Particularly, since the tape in question contains "a synthesis
13 of record facts"[15] that the Panel personally observed and
14 filtered through its experience leading to its decision to
15 grant parole. Greenholtz, supra, 442 U.S. at p. 8; Allen, 482
16 U.S. at p. 375.

17    Moreover, had the Board staff acted with due diligence and
18 consulted with the commissioners and other personnel handling
19 the records in this case,[16] the information complained of could
20 have been recovered, and/or in lieu of its recovery, the
21 "decision portion" of the hearing was certainly obtainable
22 through consultation given that (1) the transcript was completed

23 

24 14.  Susan Fisher (Presiding) and Rolando Mejia (Deputy).

25 15.  Closing statements of Petitioner and his attorney, the victim and the
   deputy district attorney.
26
27 16.  Including Sandra Maciel (Staff Service Manger I, BPH-Decision Processing
   and Scheduling Unit); Debra Levorse (Classification and Parole Representative
   Records Department); and Patricia Ricci (Transcriber of the hearing tape(s)
28 which totaled one in number "Oct. 15, 2004").

Brief in Support of Writ
                    of Habeas Corpus

approximately twenty-one days after the hearing, [17]/ thus making
it possible to document its findings with supporting reasons;
and (2) the Board staff had before it the evidence considered
and relied on by the panel in the form of an 84 page
transcript. [18]/

Noteworthy, under both state and federal law, the Board's
reasons, in and of themselves, violates due process because they
fail to strike "a balance between the interest of [Petitioner]
and of the public" (Powell, supra, 48 Cal.3d at 902), and also runs
contrary to "a predictive judgment as to what is best for both
[Petitioner] and for the community." Greenholtz, supra, 442 U.S.
at 8; Allen, supra, 482 U.S. at p. 357.

As is evident by the record, the Board's decision to
overturn the Panel's finding of suitability based solely on the
fact that the Board's staff lost the decision portion of the
transcript from the hearing contravened the due process clause
because it had nothing to do with public safety or any other
statutory criteria for denying parole. In Allen, the Supreme
Court made it clear that once the statutory requirements for
parole have been met, "the Board shall release the inmate."
482 U.S. at p. 381. Here, Petitioner overcame the legislative

17. While "the demeanor of witnesses and their manner of testifying"
(In re Hitchings, 6 Cal.4th 97, 109 (1993)) was still relatively fresh in the
minds of the commissioners. see also Greenholtz, supra, 442 U.S. at p. 8
(referring to the decisionmaker's personal observation filtered through his or
her experience.).

18. Other evidence before the Board staff were: original letters from
victims (BT at 8), the 2002 Board Report (Id. at 10), the 2003 Psych Report
(Id. at 42), Petitioner's parole plans (Id. at 27), letters of support for
Petitioner (Id. at 29), the Central-file (Id. at 35), Petitioner's
disciplinary history (Id. at 41); and the Appellate Court Opinion. Id. at 53.

Brief in Support of Writ
                                             of Habeas Corpus

expressed public safety exception of Penal Code section 3042, subdivision (b) when the granting Panel found him suitable for parole, and there "is nothing in the record" suggesting that he had engaged in any conduct reflecting adversely upon his parole grant.

Accordingly, Petitioner strongly contends, that even in applying permissible standards, the Board "cannot [deny parole] when [as here,] there is no basis for their finding[s]." See Rosenkrantz, supra, 29 Cal.4th at p. 667, quoting Schware v. Board of Examiners, 353 U.S. 232, 239 (1957); see also Hill, 472 U.S. at p. 457; Irons, supra, 479 F.3d at p. 662. Moreover, it has been noted that when no rational connection has been made between the Board's decision and the applicable criteria, the decision has been held to be "arbitrary and capricious, thereby depriving the prisoner of due process of law." Rosenkrantz, supra, 29 Cal.4th at p. 657, citing Powell, supra, 45 Cal.3d at p. 904; Sass, supra, 461 F.3d at p. 1129.

///
///
///
///
///
///
///
///
///
///

-31-

## CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of government." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974), citing <u>Dent v. West Virginia</u>, 129 U.S. 114 (1889). The Board's failure to point to any evidence in the record that would support the Decision Review Unit's conclusion, and ultimately the disapproval and rescission of Petitioner's parole grant "infringed on [Petitioner's] cognizable liberty interest that has been 'clearly established' by the United States Supreme Court" (<u>Board of Pardons v. Dumchat</u>, 452 U.S. 458, 467 (1981); <u>Greenholtz</u>, supra, 442 U.S. at 12; <u>Allen</u>, 482 U.S. at 377; <u>Sass</u>, supra, 461 F.3d at 1129) and violated his constitutional right to due process.

Accordingly, the State Court's decision was contrary to "clearly established" law and was unreasonable in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254; <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000). Petitioner therefore, request this Court to grant the petition for writ of habeas corpus and Order Respondent to release him forthwith. <u>19/</u>

Dated: 12/4/2007                    Respectfully submitted,

Frederick Lee Baker
Petitioner in Pro Se

_____

19. Under Federal Rule of Evidence 201, Petitioner request this Court to take judicial notice of its file in (Related) Habeas Corpus C-04-3753.

-32-

Court of Appeal, Sixth Appellate District - No. H031782
**S156499**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re FRED L. BAKER on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

NOV 2 8 2007

Frederick K. Ohlrich Clerk

_____
Deputy

_____
GEORGE

Chief Justice



*Appendix I.*