1  Frederick L. Baker
   Correctional Training Facility
2  Central-Facility
   C-22918
3  P.O. Box 689, B-321
   Soledad, CA 93960-0689
4
   Petitioner, Pro Se
5

ORIGINAL

FILED

FEB 2 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6        IN THE UNITED STATES DISTRICT COURT

7        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  FREDERICK LEE BAKER            )    Case No. CV 07-6289
                                  )           CW (PR)
10       Petitioner-Appellant,    )
                                  )    MOTION OF JUDICIAL
11       v.                       )    NOTICE PURSUANT TO
                                  )    FEDERAL RULE OF
12  BEN CURRY, Warden, et al.     )    EVIDENCE 201
                                  )
13       Respondent-Appellee.     )
                                  )    Judge: The Honorable
14  _____)         Claudia Wilken

15       Petitioner Frederick L. Baker, pursuant to Federal Rule of

16  Evidence 201, respectfully request this Court to take Judicial

17  Notice of the United States Ninth Circuit Court of Appeals'

18  recent opinion in Hayward v. Marshall, Case No. 06-55392, 2008

19  U.S. App. LEXIS 40, filed on January 3, 2008.  The document is

20  relevant in that the Ninth Circuit has held that when

21  "assess⌐ing] whether a state parole board's suitability

22  determination was supported by 'some evidence' in a habeas

23  case, ⌐the court's] analysis is framed by the statutes and

24  regulations governing parole suitability determinations in the

25  relevant state" (id. at *14-15) and further admonished "⌐t]he

26  test is not whether some evidence supports the reasons the

27

28

-1-

⌈Board] cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety." (Id. at *18; Hayward, supra, at *19.)

Of particular importance, the Ninth Circuit found the state court decisions in In re Elkins, 144 Cal.App.4th 475 (2006) and Scott, supra, to be instructive in this area, noting respectfully that "the ⌈Board], in reviewing a suitability determination, must focus ... on facts indicating that release currently poses 'an unreasonable risk of danger to society'" (Id. at p. 499) and that "⌈t]he factor statutorily required to be considered, and the overarching consideration, is 'public safety.'" (Scott, at 591.)

Here, the reasons given by the Board for rescinding Petitioner parole did not equate to some evidence that his release unreasonably endangers public safety, nor did the state court frame its analysis by the statute and regulations governing parole suitability determinations. In fact, the single finding upon which the Board relied in reversing the panel's grant of parole establishes no nexus between Petitioner's suitability and any specified public safety criteria. (See Exh. N at p. 2; see also Decl.(5) at p. 2.)

Accordingly, given (1) the Board's "reversal of parole in this case was not supported by any evidence that ⌈Petitioner's] would threaten public safety" (Exh(s) C and D, Hayward, supra, at *30); (2) the ⌈Monterey] County Superior Court unreasonably applied the some evidence standard to ⌈Petitioner's] petition"

-2-

1  (Exh. W, Hayward, supra, at *30-31); (3) the initial crime was

2  committed decades ago (Exh. A at p. 1); and (4) several

3  additional factors demonstrate persuasively that Petitioner can

4  be released under supervisory conditions presenting no probable

5  danger to society (Exh(s) A at pp. 27-51, Hayward supra, at

6  *19-20),  it is requested that this Court take judicial notice

7  of the Hayward opinion, attached hereto.

8  Dated: 2/18/08                        Respectfully submitted,

9

10

11                                       Frederick Lee Baker
                                         Petitioner, Pro Se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                          -3-

27  In re Frederick Lee Baker, Judicial Notice of Hayward v. Marshall

28

*2008 U.S. App. LEXIS 40, \**

RONALD **HAYWARD**, Petitioner-Appellant, v. JOHN **MARSHALL**, Warden, California Men's Colony East, Respondent-Appellee.

No. 06-55392

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

2008 U.S. App. LEXIS 40

June 8, 2007, Argued and Submitted, Pasadena, California

**January 3, 2008**, Filed

**PRIOR HISTORY:** [\*1]

Appeal from the United States District Court for the Central District of California. D.C. No. CV-05-07239-GAF(CT). Gary A. Feess, District Judge, Presiding.

**DISPOSITION:** REVERSED AND REMANDED.

**CORE TERMS:** parole, governor, prisoner, prison, public safety, reversal, commitment offense, suitability, murder, social history, danger to society, liberty interest, unsuitable, favorable, gravity, gang, parole board's, district attorney, habeas corpus, process rights, incarceration, unreasonably, unchanging, convicted, unstable, parole hearing, psychological evaluation, psychological, sentenced, endanger

**COUNSEL:** Joseph V. Camarata, Vallejo, California, for petitioner-appellant Ronald **Hayward**.

Bill Lockyer, Attorney General of the State of California, Mary Jo Graves, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Jennifer A. Neill, Supervising Deputy Attorney General, Jane Catherine Malich, Deputy Attorney General, Los Angeles, California, for respondent-appellee John **Marshall**.

**JUDGES:** Before: Alex Kozinski , Chief Judge, Daniel M. Friedman , \* and Ronald M. Gould , Circuit Judges. Opinion by Judge Gould .

\* The Honorable Daniel M. Friedman , Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

**OPINION BY:** Ronald M. Gould

**OPINION**

GOULD, Circuit Judge:

California state prisoner Ronald Hayward has twice been granted a parole date by the
California Board of Prison Terms ("Board"). 1 California's Governor has twice reversed
the Board's determination that Hayward was suitable for parole. Hayward appeals the
district court's denial of his petition for a writ of habeas corpus.

**FOOTNOTES**

1 On July 1, 2005, [*2] California created the Board of Parole Hearings to replace the
Board of Prison Terms. Cal. Penal Code § 5075(a).


I

On December 15, 1978, Hayward, with other members of the Vagos motorcycle gang,
traveled to the Buccaneer Bar in Sierra Madre, California. There, he confronted a man
who, according to conflicting accounts, had either slapped or battered and attempted to
rape Hayward's girlfriend (who would later become Hayward's wife). The confrontation
turned physical and ended after Hayward stabbed the man twelve times, killing him. In
1980, a California jury convicted Hayward of second degree murder, and the court
sentenced Hayward to state prison for a term of fifteen years to life.

Hayward has spent the last twenty-seven years in prison. He is now sixty-four years
old. He retired from the Vagos motorcycle gang in 1981. In the twenty-seven years
Hayward has spent in prison, he has completed substantial vocational training in the
fields of plumbing, mechanics, welding, meat cutting, and shoe repair. Hayward
obtained a GED in 1981 and has developed typing and computer skills through job
assignments in prison. For the last twenty years, Hayward has led prison tours for
university students [*3] studying criminal justice. He has not had a major disciplinary
violation in prison since 1989, and his last minor disciplinary infraction was in 1997.

Hayward initially denied responsibility for the murder that led to his imprisonment,
claiming that he was at the scene, but that two of his friends had stabbed and killed the
victim. However, during a parole hearing in 1993, Hayward admitted that he was
responsible for the murder and has accepted responsibility for the crime ever since. 2

**FOOTNOTES**

2 At his most recent parole hearing, Hayward explained his remorse for the crime: "I feel
horrible. . . . I took somebody's life . . . . How do you ever adjust to that?" When asked if
the victim deserved what he got because he allegedly attempted to rape Hayward's wife,
Hayward responded: "No, Ma'am. No, he didn't. No one deserves that."

Before Hayward was sent to prison, he had a history of substance abuse. In a prison
psychological evaluation, he stated the drugs he preferred to use were marijuana and
cocaine, but that he no longer uses drugs. He stated that he stopped smoking marijuana
in 1985, that he never purchased drugs himself, and that he only used drugs when they
were available because someone [*4] else had them. He also reported that he used
heroin in prison "a few times" but that "it scared [him] and [he] didn't like it." Hayward
stated that he had not had a drink of alcohol since a 1974 conviction for driving under
the influence.

Hayward has managed to stay free of drug use by taking advantage of therapy
opportunities available to him in prison. Since 1997, Hayward has participated in Yoke
Fellows groups. These groups follow a "spiritual twelve step" approach to help
members overcome substance abuse problems. Hayward attends two Yoke Fellows
group meetings per week. Hayward has also participated in the Project Change
substance abuse program, has been a volunteer in the prison's Protestant chapel, and
has completed a program entitled Alternatives to Violence.

In a 2002 psychological evaluation and at his 2003 parole suitability hearing, Hayward
discussed what he would do if granted parole: He planned to move to Monrovia,
California, where he would live with a friend, Robert Sharp. In Monrovia, Hayward had
two job offers, one with a firm that builds golf carts and another to work as a laborer
through the Teamsters Union. Hayward also said that his preferred option would be to
[*5] obtain a transfer of his probation to Idaho, where he could be with his ailing
parents, two of his daughters, and six of his grandchildren. Hayward believed that the
family support he could obtain in Idaho would enable him to find employment. Hayward
also noted that he has a carpenters' pension coming to him and that he should qualify
for some social security benefits resulting from the death of his wife.

Dr. Erich Rueschenberg, who prepared the 2002 psychological evaluation of Hayward,
concluded that "Mr. Hayward's prognosis for community living seems to be favorable,"
that "he appears to have a viable parole plan," and that he "appears to be a strong
candidate for a favorable readjustment in the community."

On June 27, 2002, after Hayward's tenth parole consideration hearing, a two-member panel of the Board reached a split decision regarding Hayward's suitability for parole. The panel referred the decision to the en banc Board which found Hayward suitable for parole by a majority vote.

Then-Governor Gray Davis reviewed the Board's decision as article 5, section 8(b) of the California Constitution entitles him to do. 3 On January 10, 2003, the Governor reversed the parole grant, giving [*6] the following reasons for denying Hayward parole: (1) Hayward's crime was "particularly grave," premeditated, and perpetrated against an outnumbered, unarmed, and inebriated victim; (2) Hayward had refused to assume adequate responsibility for the victim's death; (3) Hayward had a "lifetime of escalating criminality and violence"; (4) Hayward had an unstable social history, including an extensive history of alcohol and substance abuse; (5) Hayward had been extensively involved in gangs, both inside and outside of prison; and (6) Hayward's psychological evaluators "remain[ed] convinced that he poses a danger to society."

## FOOTNOTES

3 Article 5, section 8(b) of the California Constitution provides, in relevant part:
No decision of the parole authority of this state with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by statute. The Governor may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required [*7] to consider.

A panel of the Board held Hayward's eleventh parole consideration hearing on June 19, 2003. In addition to reconsidering the evidence with which it had been previously presented, several letters were submitted to and reviewed by the Board at that hearing. Randy Cammack, the secretary/treasurer of Teamsters Local 63 wrote to indicate that he would support Hayward's efforts to find work if Hayward was granted parole. Robert Sharp, Hayward's best friend for forty-five years, wrote to say that, if released, Hayward could live with him and borrow his truck to get to work and for any other transportation needs Hayward might have. Clifford Rees, the president and owner of a company called California Golf Cars, wrote to offer Hayward an entry-level position with his company. Ralph Steelhead, who was a teacher and coach of Hayward's when Hayward was in junior high school (and is now a chaplain's assistant at the facility in which Hayward is imprisoned) wrote to offer his support. Pastor Warren Nielsen stated his belief that

Hayward was ready for parole. Many other family members and acquaintances wrote to emphasize that they would be willing to offer emotional and financial support [*8] to Hayward as he readjusts to freedom.

Against the background of this redeeming presentation, the panel granted Hayward parole, concluding that Hayward would not pose an unreasonable risk of danger to society if released from prison. In its decision, the panel noted that Hayward had a stable social history, as evidenced by his stable relationships with his family, friends, and supporters. The panel found that, while in prison, Hayward had enhanced his ability to function within the law upon release by educating himself, receiving vocational training, and participating in therapy like the Yoke Fellows. The panel found that Hayward committed the 1980 murder as a result of significant stress in his life caused by the victim's attempted rape and violent beating of Hayward's future wife. The panel also found that the victim provoked Hayward by throwing a bottle at him on the night of the murder. The panel found that Hayward's parole plans were realistic and that he now understood the magnitude of and accepted responsibility for the murder he committed.

On November 10, 2003, the Governor again reversed the parole grant. Governor Davis cited the same factors as he had cited in his reversal [*9] of the Board's previous parole grant. In addition, the Governor cited the Los Angeles County District Attorney's opposition to Hayward's release from prison as further justification for his reversal of the Board's parole grant. 4

## FOOTNOTES

4 The district attorney had not previously opposed parole for Hayward, and the record does not explain why the district attorney chose Hayward's eleventh parole suitability hearing to intervene.

After the Governor's second reversal of parole, Hayward filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court. On June 30, 2004, the court denied the petition in a minute order. The court rejected many of the Governor's findings, particularly those regarding Hayward's failure to accept responsibility, his criminal history, and his unstable social history. Nonetheless, the court found that the Governor's decision to deny parole was supported by "some evidence." Hayward then filed a petition for a writ of habeas corpus with the California Supreme Court. That court denied the petition without comment on July 27, 2005.

Hayward filed a petition for a writ of habeas corpus in district court on October 5, 2005. Hayward contended that Governor **[\*10]** Davis's reversal of the Board's parole grant violated his right to due process of law. In her report and recommendation, the magistrate judge concluded that, under the United States Supreme Court's decision in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), and the California Supreme Court's decision in *In re Dannenberg*, 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417, 104 P.3d 783 (Cal. 2005), Hayward had no constitutionally-protected liberty interest in parole. The magistrate judge also explained that, even if Hayward had a liberty interest in parole, the Governor's reversal of the Board's parole grant was consistent with due process of law because "some evidence" supported the Governor's conclusion that Hayward posed an unreasonable risk to public safety if released. *See Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). *Finally, the magistrate judge rejected Hayward's contention that the Governor had a "no-parole-for-murderers" policy and that such a policy violated Hayward's due process rights.*

*The district court then accepted the magistrate judge's recommendation that it deny Hayward's habeas petition with prejudice, and entered judgment on February 16, 2006. s*

**FOOTNOTES**

*s Hayward has requested that we **[\*11]** take judicial notice of two recent California Court of Appeal opinions. We construe the request for judicial notice as a citation of supplemental authorities pursuant to Federal Rule of Appellate Procedure 28(j), and the opinions shall be considered by us. We thus deny the request for judicial notice as moot.*

*II*

*We review de novo the district court's denial of a habeas petition. Lambert v. Blodgett, 393 F.3d 943, 964 (9th Cir. 2004). Because Hayward is in custody pursuant to a state court adjudication and because Hayward filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we cannot grant a writ of habeas corpus unless the state court's adjudication of Hayward's due process claim resulted in a decision that (a) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (b) was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Because there was a*

*reasoned state-court judgment rejecting Hayward's federal claims--the Superior Court judgment--we look through the later unexplained order [\*12] of the California Supreme Court and analyze whether the reasoned state judgment was erroneous under the standard of § 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 804, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). 6*

## FOOTNOTES

*6 The government argues that we lack jurisdiction because Hayward did not obtain a certificate of appealability. However, in Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005), we explicitly held that AEDPA does not require a petitioner to obtain a certificate of appealability when the federal claim underlying the petition is that the petitioner was unconstitutionally denied parole. Because Hayward's petition challenges the Governor's decision that denied him parole, Hayward did not need to obtain a certificate of appealability to present his claim to us.*

## III

*The Supreme Court has instructed us to analyze a prisoner's due process claim in two steps. We first ask whether the prisoner had a liberty or property interest with which the State has interfered. And if so, we then ask whether the procedures accompanying that interference were constitutionally sufficient. Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). If we determine [\*13] that the State has violated the prisoner's due process rights, we may only grant habeas relief if the state court's incorrect decision was contrary to or an unreasonable application of the Supreme Court's holdings. Carey v. Musladin, 127 S. Ct. 649, 653, 166 L. Ed. 2d 482 (2006); Williams v. Taylor, 529 U.S. 362, 410-12, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).*

*As to the first question, in Sass, 461 F.3d at 1127-28, we held that California prisoners have a liberty interest in parole. This interest arises as a result of California Penal Code section 3041(b), which provides that, at a parole consideration hearing, the Board "shall" set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b) (emphasis added). Thus, by reversing Hayward's parole grant, the Governor deprived him of a constitutionally-protected liberty interest. The primary questions for us, then, are (1) whether California provided the constitutionally-required procedural safeguards when depriving Hayward*

of his liberty interest, and, [*14] if not, (2) whether the Los Angeles County Superior Court's conclusion that it did was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

Under California law, the Governor, in considering whether to reverse a grant of parole by the Board, must consider the same factors the Board is required to consider. *See* Cal. Const. art. 5, § 8(b); *In re Rosenkrantz*, 29 Cal. 4th 616, 128 Cal. Rptr. 2d 104, 59 P.3d 174, 210 (Cal. 2002). Accordingly, we review the Governor's decision to reverse a parole grant under the same procedural due process principles we use to review challenges to the Board's denial of parole.

We have held that "the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.' " *Irons v. Carey*, 505 F.3d 846, at 851, 2007 WL 2027359, at *3 (9th Cir. 2007) (quoting *Hill*, 472 U.S. at 457; *Sass*, 461 F.3d at 1128-29)). "When we assess whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and [*15] regulations governing parole suitability determinations in the relevant state." *Id.* Accordingly, we first "look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole." *Id.* Then, we "must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' . . . constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*." *Id.*

Under California law, prisoners serving an indeterminate life sentence, like Hayward, become eligible for a parole date after serving minimum terms of confinement required by statute. *See Dannenberg*, 104 P.3d at 785; *see also* Cal. Penal Code § 3041(a). California law provides that, at that point, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b).

Accordingly, regulations promulgated by the Board pursuant to California Penal Code section 3041(a) [*16] [7] provide that "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations. [8] When the Governor

reviews a decision of the Board, he must apply these same criteria.

## FOOTNOTES

7 California Penal Code section 3041(a) instructs the Board to "establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime."

8 The following factors tend to show unsuitability for parole: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner has a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner has committed sadistic sex offenses; (5) the prisoner has a history of mental or psychological problems; and (6) the prisoner has engaged in serious misconduct [*17] while in prison. Cal. Code Regs. tit. 15, § 2402(c). Factors tending to show suitability for parole include: (1) the prisoner has no juvenile record; (2) the prisoner has a stable social history; (3) the prisoner has shown signs of remorse; (4) the prisoner was motivated to commit the crime out of stress; (5) the prisoner suffered from Battered Woman Syndrome; (6) the prisoner lacks a significant criminal history; (7) the prisoner's age reduces the probability of recidivism; (8) the prisoner has realistic plans for release; and (9) the prisoner's behavior in prison indicates an ability to function within the law upon release. *Id.* § 2402(d).

Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made clear that the "findings that are necessary to deem a prisoner unsuitable for parole," *Irons,* 505 F.3d at 851, 2007 WL 2927359, at *3, are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety. *In re Dannenberg,* 156 Cal. App. 4th 1387, 2007 WL 3408290, at *9 (Cal. Ct. App. 2007), *modified,* 2007 Cal. App. LEXIS 1985, 2007 WL 4227229 (Cal. Ct. App. Dec. 3, 2007); [*18] *In re Lee,* 143 Cal. App. 4th 1400, 1408, 49 Cal. Rptr. 3d 931 (Cal. Ct. App. 2006); *In re Scott,* 133 Cal. App. 4th 573, 595, 34 Cal. Rptr. 3d 905 (Cal. Ct. App. 2005); *see* Cal. Penal Code § 3041(b) (providing that the Board "shall set a release date unless . . . consideration of the public safety requires a more lengthy period of incarceration for this individual"). For our purposes, then, "[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." *Lee,* 143 Cal. App. 4th at 1408

(citations and footnote omitted); *see also In re Elkins*, 144 Cal. App. 4th 475, 499, 50 Cal. Rptr. 3d 503 (Cal. Ct. App. 2006) *(holding that the "governor, in reviewing a suitability determination, must remain focused . . . on facts indicating that release currently poses 'an unreasonable risk of danger to society' " (citing Cal. Code Regs. tit. 15, § 2402(a)));Scott*, 133 Cal. App. 4th at 591 *("The factor statutorily required to be considered, and the overarching consideration, is 'public [\*19] safety.' " (citing Cal. Penal Code § 3041(b))).*

*After carefully reviewing the record, we conclude that the Los Angeles County Superior Court unreasonably applied the some evidence standard when it concluded that the Governor's reversal of the Board's grant of parole to Hayward was justified. We conclude that, viewed fairly and in its context, no evidence in the record supports a determination that Hayward's release would unreasonably endanger public safety.*

*Hayward's initial crime was committed decades ago and with the type of unusual provocation, the victim's threat to or assault of Hayward's girlfriend, that seems not likely to recur in the years of life remaining for him. Hayward has accepted responsibility for his crime and does not seek to minimize its impact. At the same time, several additional factors demonstrate persuasively that Hayward can be released under supervisory conditions presenting no probable danger to society: his record of education in prison; the lack of any recent disciplinary offense or misconduct in prison; the many people who have gone to bat for him in their letters; along with the considered decisions of the parole board to first grant Hayward parole on [\*20] his tenth application in 2001 and then, despite the Governor's rejection of the parole board's 2001 decision, decline to adopt the Governor's unsuitability findings and grant Hayward parole again upon his eleventh application in 2003.*

*Many of the factual findings upon which the Governor relied in reversing the Board's grant of parole have no evidentiary support in the record. First, the Governor asserted that Hayward was unsuitable for parole because, until relatively recently, he refused to accept responsibility for his crime and did not demonstrate any remorse for his crime. However, Hayward admitted his guilt and took responsibility for his crime at a 1993 Board hearing, more than ten years before the Governor reversed the parole grant.*

*Second, the Governor based his reversal of Hayward's parole on his finding that Hayward had an extensive record of alcohol and drug abuse. Hayward, however, has not used alcohol since 1974, much less abused it. The Governor stated that Hayward used heroin from 1955 until 1976. To the contrary, Hayward experimented with the drug for one month, while he was in prison, and then immediately quit and has never*

used it again. The Governor also expressed [*21] his concern that Hayward had only engaged in limited substance abuse counseling. However, Hayward has participated in the Yoke Fellows, Project Change, and other support and counseling programs for many years.

Third, the Governor relied on Hayward's "lifetime of escalating criminality and violence" in reversing his parole. The Governor stated that Hayward admitted he was responsible for 75 to 120 very serious crimes for which he was never arrested. There is simply no basis for such an assertion in the record.

Fourth, the Governor stated that Hayward's psychological "evaluators remain convinced that he poses a danger to society." Again, this is simply not true. The most recent psychological evaluation, performed by Dr. Rueschenberg in 2002, concluded that Hayward had a viable parole plan and that he had a favorable prognosis for adjusting to living in the community. While Dr. Rueschenberg concluded that Hayward presented a low-to-moderate risk of danger to society, he also emphasized that any risk Hayward might pose was adequately contained.

Having rejected the grounds relied upon by the Governor that are not supported by evidence in the record, we are left with only three grounds that [*22] the Governor possibly could have based his reversal of parole on: (1) Hayward's criminal history (other than the 75 to 120 alleged crimes not supported by the record); (2) Hayward's unstable social history, including a history of gang involvement; and (3) the nature of Hayward's commitment offense. 9

## FOOTNOTES

9 In addition to the factors we discuss here, the Governor also considered the opposition of the Los Angeles County District Attorney to Hayward's release. Even though the district attorney is permitted to attend parole hearings and express an opinion on the prisoner's suitability for parole, see Cal. Penal Code § 3041.7 (providing that prosecutor may be present at a parole hearing "to represent the interests of the people"), the district attorney's opinion, without more, cannot be considered "some evidence" under Hill that supports the Governor's reversal of parole. Rosenkrantz v. Marshall, 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal. 2006).


We have cautioned that a continued reliance on an unchanging factor such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct, might in some cases result in a due process violation at some point. Biggs v.

*Terhune*, 334 F.3d 910, 916 (9th Cir. 2003). [*23] *Biggs* upheld the Board's denial of parole based on the commitment offense, but cautioned:

[T]he parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

*Id.* We further noted that the denial of parole based on "[a] continued reliance . . . on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* at 915.

We restated this point in *Irons*, noting that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854, 2007 WL 2027359, at *6.
[*24] "The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison." *Scott*, 133 Cal. App. 4th at 595.

We turn to the three remaining factors that the Governor cited in support of his reversal of the Board's grant of parole and conclude that these factors, whether analyzed individually or collectively, do not constitute evidence that Hayward would pose a danger to public safety if released from prison.

First, the Governor cited Hayward's "long criminal history." The Governor specifically noted Hayward's history of juvenile mischief and asserted that Hayward was first placed on probation at age eight. Hayward's juvenile conduct, which occurred nearly fifty years ago, provides no basis for a conclusion that Hayward currently poses a risk to public safety. Though Hayward was arrested many times before he committed the murder in this case, these arrests occurred thirty or more years ago and also do not support a conclusion that Hayward currently poses any threat to public safety. It can hardly be doubted that time may attenuate [*25] the taint of certain prior misconduct, and this is particularly true as applied to consideration of Hayward's misconduct before he committed the murder that led to his conviction.

Second, the Governor reversed the Board's grant of parole to Hayward because of his unstable social history, including his history of gang activity both inside and outside of

prison. However, Hayward quit the Vagos gang in 1981 and has not been involved in any prison gang activity since 1989. Hayward's social history is, as a whole, quite stable. After Hayward committed the murder in this case, he married his girlfriend. He maintains contact with his children, parents, and other relatives. As indicated by the letters Hayward's relatives submitted to the Board, they look forward to welcoming him back into their family if he is released. In concluding that Hayward had an unstable social history, the Governor also emphasized that when Hayward was eleven years old, he impregnated an eleven-year-old girl. This conduct, which occurred more than fifty years ago, does not provide any evidence that Hayward currently poses a risk to public safety.

The final basis for the Governor's reversal of **Hayward's** parole is based [*26] on the gravity of **Hayward's** commitment offense, as the Governor found that **Hayward's** conduct was particularly heinous. We conclude, however, that in the unusual circumstances of this case, including **Hayward's** rehabilitation by education and conduct while imprisoned and the Board's successive favorable views of his application for release, **Hayward's** commitment offense, which occurred twenty-five years ago, cannot demonstrate that **Hayward's** release will pose an imminent danger to public safety. *See Rosenkrantz v. Marshall*, 444 F. Supp. 2d 1063, 1084 (C.D. Cal. 2006) *("While relying upon petitioner's crime as an indicator of his dangerousness may be reasonable for some period of time, in this case, continued reliance on such unchanging circumstances--after nearly two decades of incarceration and half a dozen parole suitability hearings--violates due process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness that it does not satisfy the 'some evidence' standard. After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is [*27] nil."); Scott*, 133 Cal. App. 4th at 595 *("[T]he predictive value of the commitment offense may be very questionable after a long period of time."). Hayward is now sixty-four years old. The Governor was reviewing Hayward's eleventh parole suitability hearing. Hayward had been in prison for nearly thirty years and had an exemplary record of conduct for most of that time. In light of the extraordinary circumstances of this case--given the provocation for Hayward's violent crime in 1978, his incarceration for almost thirty years with his positive prison record in recent times, and the favorable discretionary decisions of the Board in successive hearings, which were reversed by the Governor on factual premises most of which were not documented in the record--we conclude that the unchanging factor of the gravity of Hayward's commitment offense had no predictive value regarding his suitability for parole. In the circumstances of this case, the Governor violated Hayward's due process rights by relying on that stale and static factor in reversing his parole grant.* 10

*FOOTNOTES*

*10 We emphasize that Hayward was convicted of second degree murder for stabbing a man he believed had physically assaulted his [\*28] girlfriend. In concluding that Hayward's conviction offense does not, at this time, after nearly thirty years of incarceration, accurately predict that Hayward currently poses a danger to society, we do recognize that certain conviction offenses may be so "heinous, atrocious or cruel" that a prisoner's due process rights might not be violated if he or she were denied parole solely on the basis of the nature of the conviction offense. We need not identify those offenses here. We confine our holding to the facts of this case and the nature of Hayward's particular conviction offense.*

*The Governor also based his reversal of the Board's parole grant on Hayward's motive to commit the crime. The Governor concluded that the "official record" indicated that Hayward committed the crime in retaliation for the victim slapping Hayward's then-girlfriend. However, the Board concluded that the victim had in fact battered and attempted to rape Hayward's future wife, and that Hayward attacked the victim in retaliation for that incident, after being provoked by the victim throwing a beer bottle at him. The Governor's conclusion that Hayward committed the crime in retaliation for a slap is based on the [\*29] incomplete facts recited in the opinion of the California Court of Appeal affirming Hayward's conviction on direct review. Even if the Governor's interpretation of the facts is the correct one, the unchanging factor of Hayward's motive for committing the crime did not provide a factual basis for the Governor to conclude that Hayward's release presented a risk to public safety. The Governor violated Hayward's due process rights by relying on the unchanging factor of motive for the commitment offense in reversing parole.*

*Hayward was initially sentenced to a term of fifteen years to life in prison. Hayward has been in prison for twenty-seven years. In Irons, we noted that*
in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in *Biggs, Sass*, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board.
*Irons*, 505 F.3d at 853, 2007 WL 2027359, at \*6. Therefore, we concluded [\*30] that "[a]ll we held in those cases and all we hold today . . . is that, given the particular circumstances of the offenses in these cases, due process was not violated when these

prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Id.* Here, by contrast, Hayward has long served more than his minimum fifteen-year term of imprisonment. We hold that the Governor's reversal of parole in this case was not supported by any evidence that Hayward's release would threaten public safety, and that the Governor's reversal of his parole thus violated his due process rights.

For the same reasons, we conclude that the Los Angeles County Superior Court unreasonably applied the some evidence standard to Hayward's petition. The Superior Court identified two pieces of evidence supporting the Governor's reversal of parole. First, the Superior Court noted that the nature of the commitment offense supported the Governor's finding that Hayward was unsuitable for parole. However, as we have explained, in the circumstances of this case, reliance on Hayward's commitment offense was not sufficient to provide some evidence that his release would endanger the public. Second, [*31] the Superior Court noted that the "somewhat unfavorable psychological and counselor reports" provided some evidence to support the Governor's reversal. However, as we discussed above, the reports are not "somewhat unfavorable," but instead give a positive report on Hayward's potential to adapt to freedom and to avoid committing crimes if released. Dr. Rueschenberg, who prepared the most recent psychological evaluation of Hayward, concluded that "Mr. Hayward's prognosis for community living seems to be favorable," that "he appears to have a viable parole plan," and that he "appears to be a strong candidate for a favorable readjustment in the community." The Superior Court's determination that Hayward's psychological and counselor reports were "somewhat unfavorable" was an unreasonable interpretation of those reports, and the Superior Court's conclusion that the reports provided some evidence to support the Governor's determination that Hayward was not suitable for parole was an unreasonable application of the some evidence standard articulated in *Hill*.

In sum, we conclude that, considering all the circumstances, the denial of parole to Hayward denied him due process. We therefore reverse [*32] the district court's order denying Hayward's petition for a writ of habeas corpus, and remand the case with instructions to grant the writ.

**REVERSED AND REMANDED.**

## DECLARATION OF SERVICE BY MAIL

Case Name: FREDERICK LEE BAKER

I, the undersigned, hereby certify that I am a resident of the state of California, County of Monterey. I am over the age of 18 years and am a party to the within action. My business/residence address is P.O. Box 689, Soledad, California, 93960-0689.

On _2/15_, 2008, I caused to be served on the parties a true and correct copy of the attached **MOTION FOR JUDICIAL NOTICE "Hayward v. Marshall, Case No. 06-55392, 2008 U.S. App. LEXIS 40, Declaration of Clarification, and Civil Docket No. ED CV 06-1323 JSL (MAN)** as follow:

### U.S.MAIL

Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury that the following is true and correct.

_____
Declarant